UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

PATRICK M. DOYLE,                    )
                                     )
    **Plaintiff,**                     )
                                     )
    **v.**                            )          **CAUSE NO. 1:11-CV-00045**
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
    **Defendant.**                     )

## OPINION AND ORDER

Plaintiff Patrick Doyle appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying his application under the Social

Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI").[1] (Docket # 1.)  For the following reasons, the

Commissioner's decision will be AFFIRMED.

## I.  PROCEDURAL HISTORY

Doyle was last insured for DIB on September 30, 2005 (Tr. 106), and therefore, he must

establish that he was disabled as of that date in order to recover DIB benefits. *See Stevenson v.

Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).  Doyle applied for DIB and SSI on November 3,

2005, alleging that he became disabled as of July 1, 2002, which he later amended to July 1,

2003. (Tr. 19, 113-18.)  The Commissioner denied his application initially and upon

---

[1] All parties have consented to the Magistrate Judge. (Docket # 13.) *See* 28 U.S.C. § 636(c).

reconsideration, and Doyle requested an administrative hearing. (Tr. 85-96.) Administrative Law Judge ("ALJ") Yvonne Stam conducted a hearing on December 12, 2008, at which Doyle, who was represented by counsel; his friend, Beth Redden; and a vocational expert testified. (Tr. 397-431.)

On June 4, 2009, the ALJ rendered an unfavorable decision to Doyle, concluding that he was not disabled because he could perform a significant number of jobs in the national economy despite the limitations caused by his impairments. (Tr. 17-28.) The Appeals Council denied Doyle's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-16, 377-96.)

Doyle filed a complaint with this Court on January 31, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.) Doyle alleges that the ALJ: (1) improperly evaluated the opinions of Dr. Gelder, a consultative examiner; Dr. Shipley, Dr. Kladder, and Dr. Pressner, the state agency psychologists; and Ms. Jones, a treating mental health therapist; and (2) improperly discounted the credibility of his subjective symptom testimony and that of his friend, Ms. Redden. (Opening Br. of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 8-15.)

## II.  FACTUAL BACKGROUND[2]

### A.  Background

At the time of the ALJ's decision, Doyle was fifty-two years old; had a high school degree and completed two years of college; and possessed work experience as a utility worker, forklift operator, production assembler, machine operator, painter/construction worker, and

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 431-page administrative record necessary to the decision.

warehouse worker. (Tr. 113, 121, 195.)  He alleges that he became disabled on July 1, 2003, due

to degenerative disk disease/arthralgia and depression/mood disorder. (Opening Br. 2.)  Because

Doyle does not challenge the ALJ's findings with respect to his physical limitations (Opening

Br. 2 n.1), the Court will focus on the evidence pertaining to Doyle's mental impairments.

### B.  Doyle's Testimony at the Hearing

At the hearing, Doyle testified that he lives with his friend, Ms. Redden, and her son. (Tr.

401.)  Doyle reported that he helps out around the house by doing laundry and cooking the

evening meal. (Tr. 409, 412.)  He also tries to take care of the lawn and garden, but "it doesn't

seem to work out very well" because of his physical and mental imitations. (Tr. 410.)  With

respect to his alcohol use history, Doyle admitted that he drank between four and eight beers two

days before the hearing. (Tr. 410.)

As to his mental health,[3] Doyle testified that he was attending mental health counseling

and that he cannot function without his medications. (Tr. 406-07.)  He said that some

medications, at times, cause him to feel in "a fog" for an hour until they "kick in." (Tr. 407-08.)

He testified that he is a "loner," has difficultly getting along with others, and dislikes groups or

crowds. (Tr. 408-09.)  He also contended that he gets "distracted very easily" and has an

attention span of about fifteen minutes, and therefore often fails to complete tasks. (Tr. 412-14.)

He thought returning to work would be "problematic" because he had not been "on a schedule"

---

[3] When asked to describe his physical problems, Doyle stated that he has difficulty "holding a tool," performing "repetitive actions," and "standing or sitting for extreme periods." (Tr. 404.)  He elaborated that "all of a sudden objects will just drop out of [his] hand" and his right hand will "swell up." (Tr. 405.)  He also testified that when he bends, he "can't get back up," and has difficulty going up or down stairs. (Tr. 405.)  Doyle reported that he can sit for thirty minutes at a time, stand for thirty minutes at a time, and walk for fifteen minutes; he stated that he could lift and move a cement block if needed. (Tr. 411-12.)

3

in a long time. (Tr. 407.)  In addition, Doyle testified that he refuses to "take orders" from anyone, emphasizing that "if you stood over [him], [he] won't do anything." (Tr. 414; *see also* Tr. 422.)  He also said that he does not feel that he has "much reason to live," since his home was foreclosed upon, he has no car, his children are grown, and he is divorced. (Tr. 415-16.)

Doyle's friend and roommate of five years, Beth Redden, also testified at the hearing, essentially corroborating Doyle's testimony. (Tr. 418-23.)  That is, she testified that when Doyle feels depressed, he withdraws from people and has difficulty concentrating for more than fifteen minutes at a time. (Tr. 418-21.)  She elaborated that he drifts from task to task, but does "eventually" finish the project. (Tr. 419-20.)  She also emphasized that he does not respond well to direct orders. (Tr. 422.)

### C.  Summary of the Relevant Medical Evidence

On December 6, 2005, after he had applied for disability benefits, Doyle was evaluated by Barbara Gelder, Ph.D. (Tr. 287-91.)  He reported, among other things, problems with impulsivity, concentration, forgetfulness, confusion, anger management, trusting and getting along with others, moodiness, problem solving, irritability, racing thoughts, and learning new material. (Tr. 287-88.)  He rated his depression as a "7" on a scale of "10." (Tr. 287-88.)  On mental status examination, he was able to repeat six digits forward and four digits backward after hearing them and four words immediately after hearing them, but could not recall them five or ten minutes later; performed simple rote addition, subtraction, and multiplication, but made a mistake with division; completed serial sevens backward with no errors; but could not state the date. (Tr. 289.)  He exhibited a poor fund of general information and was somewhat irritable and argumentative during the evaluation, yet was reasonably cooperative and willing to disclose

personal information. (Tr. 289.)

As to his daily activities, Doyle told Dr. Gelder that he gets up, has a cigarette, and starts drinking beer. (Tr. 289.)  He needs reminders to take his medications, but requires no assistance with self care tasks. (Tr. 289.)  His interests included reading and art. (Tr. 289.)  Dr. Gelder diagnosed Doyle with alcohol dependence, substance abuse, and depression. (Tr. 291.)  She rated his current Global Assessment of Functioning ("GAF") score at 43 and his past GAF at 45.[4] (Tr. 291.)

On January 10, 2006, Dr. H.M. Bacchus performed a physical examination of Doyle, noting his history of depression and chronic alcoholism. (Tr. 284.)  He reported that Doyle had abused alcohol for twenty-five years and that he had two inpatient psychiatric stays in the 1980's and early 1990's. (Tr. 284.)  Dr. Bacchus observed that Doyle was taking medication for his depression, but that he continued to drink twelve to eighteen beers a day. (Tr. 284.)

On January 18, 2006, William Shipley, Ph.D., a state agency psychologist, reviewed Doyle's record. (Tr. 247-60.)  He noted that Doyle drank twelve beers a day, which caused him "significant" problems. (Tr. 259.)  Dr. Shipley concluded that Doyle had "marked" restrictions in performing his daily living activities, social functioning, and in maintaining concentration, persistence, or pace, and that Doyle had a substance addiction that met the requirements of Listing 12.09, but that his drug and alcohol use was material to this finding. (Tr. 247, 257, 259.)

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.*  A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

Dr. Shipley's opinion was later affirmed by two other state agency psychologists. (Tr. 247.)

On August 28, 2008, Doyle was evaluated by Ms. Tara Pelz, a clinician at Park Center. (Tr. 214-24.) Doyle's behavior and appearance were appropriate, and he exhibited normal insight, judgment, thought content, memory, and orientation. (Tr. 216.) He reported, however, having excessive worry and panic attacks twice a week, and that he felt depressed, angry, and anxious. (Tr. 216.) He also stated that he had difficulty staying on task and getting along with others. (Tr. 216.) Doyle admitted that on a daily basis he drinks six beers and uses "just a little bit" of marijuana. (Tr. 218.) Ms. Pelz recorded that Doyle reported difficulty staying on a schedule, managing finances, and using transportation, but that he was "fully capable of independent living" and had only a mild degree of impairment with self care. (Tr. 217.) She observed no evidence of interpersonal problems or antisocial disorder, but did find that Doyle had a mild adjustment problem and a moderate substance abuse disorder that required treatment. (Tr. 218.) Ms. Pelz diagnosed Doyle with a mood disorder, NOS; alcohol dependence; and cannabis dependence. (Tr. 222.) She assigned him a current GAF of 55, indicating moderate symptoms, and referred him for group and individual therapies. (Tr. 222-23.)

On December 3, 2008, Michele Jones, a mental health therapist at Park Center, updated her treatment plan and reiterated the GAF score of 55. (Tr. 210-13.) On January 2, 2009, Ms. Jones penned a letter stating that since September 2008, Doyle had been receiving treatment for a mood disorder and had attended group therapy on a weekly basis, but had been seen only once individually. (Tr. 208.) She reported that Doyle often makes tangential remarks during group sessions and has a difficult time connecting with others, and that "his interactions at times appear odd." (Tr. 208.) Ms. Jones reported that Doyle said he used to drink twelve beers a day but now

has reduced to four, which he does not believe affects his functioning. (Tr. 208.)  Ms. Jones thought that, even "independent of his drinking," Doyle "would have a difficult time fitting in and working with others." (Tr. 208.)

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).  Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

### IV.  ANALYSIS

#### A.  *The Law*

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[5] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.  An affirmative answer leads either to the next step or, with respect to steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

---

[5] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

*B.  The ALJ's Decision*

On June 4, 2009, the ALJ rendered her decision. (Tr. 17-28.)  She found at step one of the five-step analysis that Doyle had not engaged in substantial gainful activity since his amended alleged onset date. (Tr. 19.)  At step two, the ALJ concluded that Doyle's degenerative disk disease/arthralgia, alcohol abuse, and depression/mood disorder were severe impairments. (Tr. 19.)  At step three, the ALJ determined that Doyle's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 20.)

Before proceeding to step four, the ALJ determined that Doyle's testimony of debilitating limitations was not credible to the extent it was inconsistent with the following RFC:

> [T]he claimant has the residual functional capacity to perform medium work . . . except occasionally climb ladders, ropes and scaffolds, crouch and crawl, and frequently climb ramps and stairs, stoop, balance and kneel.  He must avoid concentrated exposure to hazards such as unguarded machinery or unprotected heights.  He is further limited to brief and superficial contact with coworkers and supervisors, no close supervision, and no work with the general public.

(Tr. 23.)  Based on this RFC and the VE's testimony, the ALJ found at step four that despite the limitations caused by his impairments, Doyle was able to perform his past relevant work as a production assembler, machine operator, and utility worker. (Tr. 27.)  Therefore, Doyle's claims for DIB and SSI were denied. (Tr. 27.)

*C.  The ALJ's Consideration of the Medical Source Opinions of Record Is Supported by Substantial Evidence*

Doyle alleges that the ALJ's consideration of the opinions of the medical source opinions of record is not supported by substantial evidence.  Doyle's arguments, however, fail to warrant a remand of the Commissioner's final decision.

9

1. Dr. Gelder's Opinion

Doyle first contends that the ALJ improperly discounted the GAF score of 43, reflecting serious symptoms, assigned by consulting psychologist Dr. Gelder on December 6, 2005.

In discounting the GAF score assigned by Dr. Gelder, the ALJ explained:

Such a low GAF score is not dispositive for Social Security disability purposes. This is because the GAF score is not purely, or even primarily, an evaluation of psychological limitations in the sense used by the Social Security Administration. Rather, the GAF is comprised of three factors—"psychological, social and occupational functioning" (DSM-IV, p. 30).

(Tr. 22-23.)  In that regard, the ALJ observed that on the fourth axis of her diagnosis Dr. Gelder recorded Doyle's numerous psychosocial stressors, including his loss of home, divorce, limited contact with his children, inadequate finances, unemployment, and lack of mental health and social services support, none of which the ALJ reasoned "elucidate the actual functional effects of [Doyle's] mental impairments." (Tr. 23.)  The ALJ then emphasized that a GAF score reflecting serious symptoms does not translate directly into extreme or marked degrees of limitation on the functional limitation scaled used by Social Security for evaluating mental impairments.

The Seventh Circuit Court of Appeals has acknowledged that a GAF score is indeed "useful for planning treatment." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (quoting AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV") 32-34 (4th ed. 2000)).  It has explained, however, that because the GAF score is a measure "of both severity of symptoms *and* functional level . . . [and] always reflects the worse of the two, the score does not reflect the clinician's opinion of functional capacity." *Id*. (emphasis in original) (quoting DSM-IV at 33); *see Curry v. Astrue*, No. 3:09-cv-565, 2010 WL 4537868, at *7

(N.D. Ind. Nov. 2, 2010) ("GAF scores are more probative for assessing treatment options rather than determining functional capacity and a person's disability."); *Martinez v. Astrue*, No. 9 C 3051, 2010 WL 1292491, at *9 (N.D. Ill. Mar. 29, 2010) ("GAF scores are intended to be used to make treatment decisions, . . . not as a measure of the extent of an individual's disability." (internal quotation marks and citation omitted)).

"Accordingly, nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton*, 596 F.3d at 425 (citation and internal quotation marks omitted); *see Adams v. Astrue*, No. 1:06-cv-393, 2009 WL 1404675, at *4 (N.D. Ind. May 18, 2009) ("Social Security regulations don't require an ALJ to determine the extent of an individual's disability based solely on a GAF score, but the scores may assist in formulating the claimant's [RFC].").  Thus, the ALJ's consideration of the GAF score assigned by Dr. Gelder is not unreasonable under Seventh Circuit case law.

Additionally, the ALJ pointed out that the GAF score is of particular use "in tracking the clinical progress of individuals." (Tr. 23 (quoting DSM-IV at 30).)  She noted, however, that Dr. Gelder, as a consulting examiner, met with Doyle only one time, and thus the GAF score she assigned (as well as the past GAF) was simply a "snapshot" that included all of Doyle's social and occupational factors, rather than a tracking of his progress. (Tr. 23.)  Therefore, the ALJ's logic for discounting of Dr. Gelder's GAF score on this basis "is easily traceable and not unreasonable." *Anderson v. Astrue*, No. 1:09-cv-327, 2010 WL 3522574, at *8 (N.D. Ind. Aug. 31, 2010) (affirming the ALJ's discounting of an examining clinician's GAF score as a "snapshot").

Finally, Doyle contends that "the ALJ was mistaken in finding that Axis IV related to the

GAF," asserting that comments under Axis IV are "for reporting psychosocial and environmental problems that may affect the diagnosis, treatment and prognosis of mental disorders." (Opening Br. 9.) This argument, however, "amounts to nothing more than a dislike of the ALJ's phraseology." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The ALJ adequately explained her rationale, which was not unreasonable, for assigning little weight to Dr. Gelder's low GAF score. Thus, Doyle's first argument fails to warrant a remand of the Commissioner's final decision. *See Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000) (explaining that the court is not allowed to substitute its judgment for the ALJ by "reweighing evidence" or "resolving conflicts in evidence").

      2.  <u>The State Agency Psychologists' Opinion</u>

Next, Doyle contends that the ALJ's decision to assign little weight to the opinion of the reviewing state agency psychologists is not supported by substantial evidence. The state agency psychologists opined that Doyle had "marked" restrictions in his daily living activities, social functioning, and maintaining concentration, persistence, or pace, and thus met the severity requirements for Listing 12.09, substance abuse; however, they also found that Doyle's drug and alcohol use was "material" to this finding.

The ALJ rejected the state agency psychologists' opinion that Doyle had "marked" limitations because they "gave no supporting rationale for their conclusion, except to note that [Doyle] drinks 12 beers a day and to make a general statement that [he] has 'significant problems as a result of his drinking.'" (Tr. 22 (quoting Tr. 259).) Of course, the ALJ is entitled to discount a medical opinion that provides little evidence in support its conclusion. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("The more a medical source presents relevant evidence to

support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *see Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) ("[A]n ALJ is required to determine the weight a nontreating physician's opinion deserves by examining how well [the physician] supported and explained his opinion . . . ."); *Smith v. Apfel*, 231 F.3d 433, 441 (7th Cir. 2000) (collecting cases).

The ALJ also found the state agency psychologists' opinion inconsistent with other evidence of record, which "instead suggests that [Doyle's] functional condition actually is *better* when he drinks." (Tr. 22 (emphasis added); *see, e.g.*, Tr. 151-52 ("[Doyle] drinks daily at least 12 beers, functions better when drinking.").)  Indeed, earlier in her decision, the ALJ found, for example, that Doyle had only a mild restriction in his daily living activities, noting that he does some cleaning, laundry, yard work, grocery shopping, and simple meal preparation. (Tr. 21); *see Simila*, 573 F.3d at 515 ("The [ALJ] is not required or indeed permitted to accept medical evidence if it is refuted by other evidence—*which need not itself be medical in nature . . . .*" (emphasis in original and citation omitted)).

Likewise, the ALJ concluded earlier in her decision that Doyle had only mild difficulties in maintaining concentration, persistence, or pace. (Tr. 21.)  In that respect, the ALJ observed that when Doyle was evaluated by Dr. Gelder, he was able to perform most simple mathematical calculations and complete serial sevens backward in one minute and seven seconds with no errors, demonstrating "reasonably good concentration ability." (Tr. 21.)  In addition, the ALJ commented that, despite Doyle's social functioning problems, Doyle performed fairly steady full-time work in the five years prior to his alleged onset date despite his admitted excessive consumption of alcohol during that time and his social functioning problems. (Tr. 22; *see* Tr.

159-60 ("My physical limitations prevent my doing substantial, full time work . . . .  You blame

alcoholism for everything wrong in my life . . . period.  Well where were you when I drank and

worked everyday for 20+ years.").)

Consequently, the ALJ's conclusion to assign little weight to the state agency

psychologists' opinion, because it failed to cite supporting evidence and was inconsistent with

other evidence of record, is supported by substantial evidence. *See Simila*, 573 F.3d at 515

(declining to give a nontreating physician's substantial weight "because it lacked consistency

and supportability"); 20 C.F.R. §§ 404.1527(d), 426.927(d) ("Generally, the more consistent an

opinion is with the record as a whole, the more weight we will give to that opinion.").

3.  Park Center's Opinion

Finally, Doyle asserts that the ALJ improperly evaluated the opinion of Ms. Jones, his

group leader and mental health counselor at Park Center.  Ms. Jones observed that Doyle often

made tangential remarks in group and had difficulty connecting with other group members.  She

opined that, even "independent of his drinking," Doyle "would have a difficult time fitting in and

working with others." (Tr. 208.)

When determining the mental portion of Doyle's RFC, the ALJ observed that Doyle's

"tendency to isolate and to respond poorly to directions . . . would produce some difficulties in

working with others, as noted by his therapist, Ms. Jones." (Tr. 26.)  The ALJ, accordingly,

restricted Doyle to work in "situations in which he does not have more than brief and superficial

contact with coworkers and supervisors, does not have close supervision, and does not work with

the general public." (Tr. 26.)

Nonetheless, Doyle baldly asserts that the problems in social functioning identified by

14

Ms. Jones— that he would have a difficult time fitting in and working with others—were "more severe" than those included in the ALJ's RFC. (Opening Br. 13.)  Doyle's conclusory assertion simply has no merit.  The ALJ found that Doyle had "moderate" difficulties in social functioning (Tr. 21), which is consistent with the GAF score of 55, indicating moderate symptoms, assigned in August and December 2008 by Ms. Pelz and Ms. Jones of Park Center (Tr. 21, 210, 222). Moreover, the ALJ specifically noted Doyle's past work history despite his long standing use of alcohol (*see* Tr. 107, 160, 284) and emphasized that "additional or more restrictive limitations are not required to accommodate his mental impairments" (Tr. 26).  The ALJ's conclusion is supported by substantial evidence. *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (finding that claimant's ability to work part-time undermined his claim of total disability).

In sum, Doyle's various criticisms of the ALJ's consideration of the medical source opinions of record fail to warrant a remand of the Commissioner's final decision.

### D.  The ALJ's Credibility Determinations Will Not Be Disturbed

Doyle next challenges the ALJ's decision to discount the credibility of his subjective symptom testimony and that of his friend, Ms. Redden.

Because the ALJ is in the best position to evaluate the credibility of a witness, her determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), her determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at

15

435; *see Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

    1. <u>Doyle's Subjective Symptom Testimony</u>

    Doyle contends that although the ALJ provided reasons for discounting his subjective complaints of pain, she "did not give reasons for and explain why she did not give credit to a statement on his mental limitations." (Opening Br. 14.)  Contrary to Doyle's assertion, the ALJ did indeed provide reasons for discounting the credibility of his symptom testimony concerning his mental limitations.

    First, the ALJ found Doyle's assertion that his mental impairments prevented him from working was inconsistent with his long-standing work history, which, for the most part, did not reflect significant interpersonal problems on the job. (Tr. 26); *Berger*, 516 F.3d at 546.  In that respect, the ALJ found that "there is no evidence that his depression or his alcoholism are worse now than they were then." (Tr. 26.)  In addition, the ALJ discounted Doyle's complaints of disabling concentration problems because, as discussed *supra*, during his evaluation by Dr. Gelder, he was able to perform simple mathematical calculations and perform serial sevens backward with no errors, demonstrating "reasonably good concentration ability." (Tr. 21.)  Of course, "subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), SSR 96-7p.

    The ALJ also noted that Doyle had never seen a psychiatrist and had just recently started to attend mental health counseling. (Tr. 26.)  The ALJ is entitled to consider the type of

treatment, or lack thereof, that a claimant has undergone when determining that claimant's credibility. *See Simila*, 573 F.3d at 519 (explaining that the Social Security "regulations expressly permit the ALJ to consider a claimant's treatment history"); *Ellis v. Astrue*, No. 2:09-cv-145, 2010 WL 3782265, at *20 (N.D. Ind. Sept. 30, 2010) (affirming the ALJ's discounting of claimant's complaints of debilitating fatigue given the discrepancies between her self-reported symptoms and the lack of treatment for the purported condition); 20 C.F.R. §§ 404.929(c)(3), 416.929(c)(3) (considering a claimant's use of medications and treatment measures as two factors in analyzing claimant's subjective symptoms); SSR 96-7p.

And, earlier in the decision, the ALJ considered Doyle's activities of daily living, which the ALJ concluded were only minimally restricted and included cleaning, laundry, yard work, grocery shopping, and simple meal preparation. (Tr. 21); *see Rice*, 384 F.3d at 371 (considering claimant's performance of daily activities as a factor when discounting his credibility; *Schmidt*, 395 F.3d at 746-47 (same); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p; *see generally Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (unpublished) ("[W]e read the ALJ's decision as a whole and with common sense.").

Moreover, the ALJ did indeed credit Doyle's subjective symptom testimony to some extent, acknowledging that his alcohol abuse and his depression/mood disorder are severe impairments. *See generally Hodges v. Astrue*, No. 1:09-cv-216, 2010 WL 3717256, at *9 (N.D. Ind. Sept. 14, 2010) (explaining that the relevant inquiry is whether the claimant's pain "was of a disabling severity," not the diagnosis that he was assigned).  Accordingly, to accommodate his mental limitations, the ALJ restricted Doyle to work that involves only "brief and superficial contact with coworkers and supervisors, no close supervision, and no work with the general

17

public." (Tr. 23); *see, e.g.*, *Vincent v. Astrue*, No. 1:07-cv-28, 2008 WL 596040, at *16 (N.D. Ind. Mar. 3, 2008) (affirming ALJ's credibility determination where he discredited the claimant's symptom testimony only in part).

In sum, the ALJ adequately built an accurate and logical bridge between the evidence of record and her conclusion that Doyle's testimony of disabling impairments was not entirely credible, and her determination is not "patently wrong." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000); *Powers*, 207 F.3d at 435; *see generally Berger*, 516 F.3d at 546 (articulating that even where some of the ALJ's findings concerning the claimant's credibility were a bit harsh, "an ALJ's credibility assessment will stand as long as there is some support in the record . . . ." (citation omitted)).  Therefore, the ALJ's credibility determination, which is entitled to special deference, *Powers*, 207 F.3d at 435, will be affirmed.

2.  <u>Ms. Redden's Testimony</u>

Not to be deterred, Doyle criticizes the ALJ's discounting of the testimony of his friend, Ms. Redden, about his concentration difficulties.

The ALJ considered Ms. Redden's statements about Doyle's physical and mental impairments several times in his decision. (*See* Tr. 21-22, 24, 26.)  Thus, as a general matter, the ALJ certainly did not turn a blind eye to Ms. Redden's testimony.[6]  Nevertheless, the ALJ chose to discount Ms. Redden's testimony pertaining to the severity of Doyle's concentration

---

[6] The ALJ did not necessarily have to independently evaluate Ms. Redden's testimony.  If testimony is "redundant," an ALJ does not need to independently evaluate it, since the testimony is not a separate line of evidence. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993); *see Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996); *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994); *Brandenburg v. Social Sec. Admin.*, No. 104CV01376DFHWTL, 2005 WL 2148119, at *6 (S.D. Ind. Aug. 2, 2005).  Here, Ms. Redden's testimony essentially corroborated Doyle's testimony concerning the limitations caused by his impairments; therefore, her testimony did not constitute a separate line of evidence that the ALJ needed to address.

problems, stating that "she does not have the expertise to discern the medical reason for the claimant's actions." (Tr. 26.)

To explain, when concluding that Doyle had only minimal difficulties in concentration, persistence, or pace, the ALJ considered Doyle's statement that he often gets "bored" and thus drifts from one activity to another. (Tr. 21, 413.)  The ALJ commented that it was "not clear that this is a symptom of his impairments or just a personal preference." (Tr. 21.)  Considering this context, *Buckhanon*, 368 F. App'x at 678-79, the ALJ's decision to discount Ms. Redden's assertions about Doyle's concentration abilities is easily traced and quite logical. *See Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985) ("If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough.").  That is, the ALJ thought that Ms. Redden lacked the medical expertise to discern whether Doyle's drifting among tasks was actually a symptom of his mental impairments or simply attributable to boredom with the task at hand.  The ALJ also considered that Ms. Redden attributed Doyle's failure to complete certain chores, such as yard work, to pain, *not* concentration difficulties. (Tr. 21.)

As a result, Doyle's final argument, like his other four arguments, fails to warrant a remand of the Commissioner's final decision.

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED.  The

Clerk is directed to enter a judgment in favor of the Commissioner and against Doyle.

SO ORDERED.

Enter for this 14th day of February, 2012.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
